FILED

2004 Dec-28  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DEON SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. CV-03-S-3021-NE** |
| | ) | |
| SEAN O'KEEFE, Administrator, | ) | |
| NASA | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Deon Smith, a Caucasian male, alleges age, race, national origin, and gender discrimination in his non-selection for a supervisory position at the National Aeronautics and Space Administration's George C. Marshall Space Flight Center located on the United States Army's Redstone Arsenal, near Huntsville, Alabama ("defendant" or "MSFC").  The action is before the court on defendant's motion for summary judgment (doc. no. 18).  The court conducted a hearing on that motion on November 23, 2004.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  The

motion pierces the pleadings, and "strikes at the heart of the claim.  In effect it argues

that as a matter of law upon admitted or established facts the moving party is entitled

to prevail."  Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed.

1994).

## II.  FACTUAL BACKGROUND

Plaintiff is an "employee" of defendant.[1]  He currently holds the position of Aerospace Engineer, AST, Liquid Propulsion Systems in the Engine Systems Engineering Group, Vehicles & Systems Development Department, Space Transportation Directorate, MSFC, and is a GS-14, step 10 employee.[2]

---

[1]"Employee" is defined in 5 U.S.C. § 7511(a)(1) as follows:

**(a)** For the purpose of this subchapter--

**(1)** "employee" means--

**(A)** an individual in the competitive service--

**(i)** who is not serving a probationary or trial period under an initial appointment;  or

**(ii)** who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;

**(B)** a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions--

**(i)** in an Executive agency;  or

**(ii)** in the United States Postal Service or Postal Rate Commission;  and

**(C)** an individual in the excepted service (other than a preference eligible)--

**(i)** who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service;  or

**(ii)** who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less.

[2]*See* Def. Exh. A.

3

The promotion opportunity at issue in this action — *i.e.*, MSFC Vacancy Announcement Number MS03C0001, Supervisory, AST, Experimental Facilities Development, GS-801-15, Center Operations Directorate, Facilities Engineering Department, Operations & Maintenance Group — opened on October 4, 2002.[3] The advertised position was for a supervisory "Group Lead" position; and the person selected to fill the position would be responsible for planning, managing, and controlling the activities of the group through two subordinate team leads and staff personnel.[4]   Qualified candidates for the position were advised that they would be evaluated on their demonstrated commitment to MSFC values as indicated in the Comments section of the vacancy announcement.[5]

Dana Blaine is the human resources specialist who staffed MSFC Vacancy Announcement MS03C0001.[6]  Twelve applicants, including the plaintiff and selectee, applied for the vacancy.[7]   One applicant, David Burns, was not referred to the selecting official for consideration because he was not within the area of consideration.[8]   Blaine determined that the remaining eleven applicants met the

---

[3]*See* Def. Exh. B.

[4]*See id.* at § Duties.

[5]*See id.* at § Comments.

[6]*See* Def. Exh. C at § Administrative.

[7]*See id.*

[8]*See id.* at § Tracking.

minimum qualification and skills requirements and referred them to the selecting official for consideration.  Plaintiff was referred to the selecting official on a Non-Competitive Referral List due to his previous employment with TVA at a grade level apparently equivalent to a 15.[9]  The remaining ten applicants were referred to the selecting official on a Competitive Placement Plan Certificate.[10]

The selecting official, as indicated in the Competitive Placement Plan and Non-competitive Referral List, could select any applicant whose name appeared on the certificate or referral list.[11]   Edwin Jones, Manager, Facilities Engineering Department, Center Operations Directorate, was the selecting official for the position at issue.[12]  Prior to the interviews, Jones reviewed each applicant's application and developed a set of twenty questions to elicit information that he believed would enable him to select the best applicant for the position.[13]  Jones interviewed all eleven referred applicants, and each applicant was asked the predetermined set of twenty questions developed prior to the interview.[14]

During each interview, Jones contemporaneously recorded the applicants'

---

[9]See Def. Exh. E, Blaine Depo. at 16; Def. Exh. D).

[10]See Def. Exh. F.

[11]See Def. Exhs. D and F; Def. Exh. G, Jones Depo. at 69, lines 3-12.

[12]See Def. Exh. H, Jones Report of Investigation Interrog. Responses 1,2, and 8.

[13]See Def. Exh. G, at 75, lines 7-10, 22; at 76, line 7.

[14]See Def. Exh. H at 3, number 12.

answers on the interview question sheet along with the applicant's name and date and time of the interview.[15]   Jones evaluated the response to each question by means of the following shorthand notations:  a plus sign ("+") denoted a favorable answer that was well thought out and illustrated one or more of the qualities identified as important to the selecting official; an "O.K." notation indicated an answer that was minimally acceptable, but not considered detrimental with respect to the qualities identified as important to the selecting official; or a minus sign ("—") denoted an answer that was contrary to the list of desired qualities identified as important to the selecting official.[16]   A numerical score of three (3) points was assigned to each response evaluated with a plus sign; a numerical score of one (1) point was assigned to each response evaluated with an "O.K." notation; and a numerical score of negative one (-1) point was assigned to each response evaluated with a minus sign.[17]

Ms. Seunghee Lee, the selectee for the vacancy announcement, accumulated the highest overall score of 56 based on the interviews, while plaintiff ranked sixth (6th) out of the eleven applicants with an overall score of 28 on the interview.[18]  Jones noted that, even though Lee attained the highest overall score on the interview, she

---

[15]*See* Def. Exhs. H and I.

[16]*See* Def. Exhs. H and I; Def. Exh. G at 110, lines 6-23– 111, line 6.

[17]*See* Def. Exh. G at 111, lines 1-6.

[18]*See* Def. Exhs. I, G at 128, lines 13-19.

appeared to have a limited amount of direct facilities experience.[19]  Jones therefore examined the experience cited in her resume more closely and concluded that Lee's actual experience was equivalent in complexity and responsibility to the facilities experience.[20]

Jones also communicated with Lee's immediate supervisor to obtain additional information about Lee since Jones did not know her well.[21]  Lee's immediate supervisor provided extremely high praise for Lee, and informed Jones that Lee had been placed in some very difficult situations and always had been able to find the means to build and improve relationships and to solve problems in order to ensure project success.[22]  It was the opinion of Lee's immediate supervisor that she would be outstanding in a supervisory role.[23]  Jones's final step in the selection process was to confirm Lee's commitment to the MSFC's core values and to employee empowerment, and he then notified the Human Resources Office of his selection.[24]

Plaintiff was notified that he was not selected for the position in correspondence dated December 17, 2002.[25]  Plaintiff filed a formal Complaint of

---

[19]*See* Def. Exh. G at 83, lines 15-22 ;84, lines 2-3.

[20]*See* Def. Exh. H at 4, Interrog. Response #12, ¶ 2.

[21]*See id*. at ¶ 3; Def. Exh. G at 83-84.

[22]*See* Def. Exh. H at 4, ¶ 3.

[23]*See id.*

[24]*See id.* at ¶ 4.

[25]*See* Def. Exh. J.

7

Discrimination alleging that he was not selected for the position because of discrimination on the bases of age, race, sex, and national origin.[26]  At the time of the selection, plaintiff was 65 years old;[27] whereas, at 42 years of age, Ms. Lee was significantly younger than plaintiff.[28]

NASA's Affirmative Employment Program Plan for Fiscal Years 1998-2002 indicated that there were problems in the minority representative rate and promotion rate for grade 15 and SES professional positions.[29]  MSFC's Affirmative Employment Plan for Fiscal Year 1998 indicated that there was an under-representation of Asian/Pacific Islander males and females in the Aerospace Engineer category.[30] Jones, as the selecting official, had the responsibility to follow NASA's and MSFC's affirmative action guidelines.[31]

Charles Scales is Director of the Equal Employment Office at MSFC.[32]  Scales acknowledged that after the selection was made, he would have included Ms. Lee's selection in his annual report and that her selection would address one of the areas in

---

[26]See Def. Exh. K.

[27]See Def. Exh. A.

[28]See doc. no. 19 at unnumbered page 16; P. Exh. Vol. 2 Tab 14.

[29]See P. Exh. Vol. 2, Tab. 6 at 16.

[30]See id., Tab 7 at 2.

[31]See P. Exh. Vol. 1, Tab A at 32.

[32]See id., Tab G at 5.

which defendant is under-represented.[33]  Scales never discussed the job selection at issue with Jones.[34]

One NASA employee heard Jones mention in a staff meeting that the group was getting older.[35]  Another NASA employee heard Jones make a statement on or about December 26, 2002, to the effect that the average age of the Facilities Engineering Department employees, including the O&M group, was over fifty, and that was a "problem."[36]  Jones explained his comments as follows:

> To the best of my knowledge, I never said that we need younger blood or younger people in the discussions.  However, I have repeatedly, repeatedly emphasized the fact that we need to be hiring fresh-outs because we have an experience gap.  We have our senior people retiring with no ability to transfer that knowledge to the people coming in.[37]

## III.  DISCUSSION

### A.    Alleged Discrimination Based Upon Race, Gender, and National Origin

When evaluating employment discrimination claims supported by circumstantial evidence, courts are guided by the now familiar analytical framework that the Supreme Court announced in *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

[33]*See id.*, at 13, 18.

[34]*See id.*, at 19.

[35]*See* Def. Exh. M.

[36]*See* P. Exh. Vol 1, Tab H at 3.

[37]*See* Def. Exh. G at 133.

792 (1973), and then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141-42 (2000). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of an employer's intent to discriminate on the basis of race or some other prohibited characteristic.

In a failure to promote case, the plaintiff must satisfy the following elements in order to establish a *prima facie* case: (1) he is a member of a protected group; (2) he applied for, and was qualified to fill, a position for which the defendant was accepting applications; (3) despite his qualifications, he was rejected for the position; and (4) after his rejection, the employer *either* kept the position open, *or* filled it with a person outside plaintiff's protected class. *See, e.g.*, *Walker v. Mortham*, 158 F.3d 1177, 1179 n.2, 1185-93 (11th Cir. 1998) (explaining that a plaintiff need not introduce evidence of the relative qualifications of the person promoted instead of plaintiff as part of his *prima facie* case for failure to promote); *Crawford v. Western Electric Company, Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980).[38] "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully

---

[38]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

discriminated against the employee." *Burdine*, 450 U.S. at 254.

"The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254).

The employer's burden at the second stage of analysis "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *Hicks*, 509 U.S. at 509). "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55 (citation and footnote omitted)). Indeed, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S. at 257, then the "rebuttable presumption" of discrimination created by the

11

demonstration of a *prima facie* case[39] is refuted, "drops from the case," and "the factual inquiry proceeds to a new level of specificity."  *Id.* at 255 & n.10.

In this final step of the analytical process, the plaintiff must be afforded the opportunity to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).  The plaintiff's burden at this step of the analysis is that of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct' . . . ."  *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*).  The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs*,

---

[39]*See Burdine*, 450 U.S. at 254 n.7 (explaining that, in the *McDonnell Douglas* context, the phrase "*prima facie* case" is used to "denote the establishment of a legally mandatory, rebuttable presumption. . . .").

106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).

In summary, "once a plaintiff has established a *prima facie* case *and* has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of [summary judgment under Rule 56, or] judgment as a matter of law [under Rule 50]." *Combs*, 106 F.2d at 1532 (emphasis supplied).  Stated somewhat differently, "evidence of pretext, *when added to* [the plaintiff's evidence of] a *prima facie* case, is sufficient to create a genuine issue of material fact that precludes summary judgment." *Id.* at 1531 (emphasis supplied) (citing *Batey v. Stone*, 24 F.3d 1330, 1335-36 (11th Cir. 1994)); *see also Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (holding that once a plaintiff has established a *prima facie* case and produced sufficient evidence to permit a reasonable factfinder to disbelieve the employer's proffered explanation for its actions, that precludes summary judgment); *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994) (same).

Here, defendant assumes, without conceding, that plaintiff has stated a *prima facie* case of race, national origin, gender, and age discrimination.  Defendant explains that Ms. Lee was selected because she performed much better during her interview, displaying stronger leadership and management skills.  Therefore, the

court's focus on summary judgment will be the pretext analysis.

### 1.      Pretext

Plaintiff makes two arguments in support of its contention that defendant's stated reason for not selecting him was pretextual.  First, plaintiff argues that he was more qualified for the position than Lee.  Second, plaintiff argues that defendant deviated from the normal interview process by failing to rank the minimally qualified applicants against the identified job competencies.

### a.      Plaintiff's qualifications for the supervisor position

In most cases, "it is the *employer* who initially presents evidence of relative qualifications, not the employee." *Walker v. Mortham*, 158 F.3d at 1190 (emphasis in original).  When an employer offers as its reason for *not* promoting a plaintiff the assertion that the person who *was* promoted was "more qualified" than the plaintiff, that allegation casts upon plaintiff the burden to demonstrate that the stated reason is pretextual.

> [A plaintiff] cannot . . . establish pretext simply by showing that she is more qualified than [the person who was selected].  *See Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir.2000).  Rather, [the plaintiff] must adduce evidence that the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face." *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir.2001); *Lee*, 226 F.3d at 1254; *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1340 (11th. Cir.2000) (all quoting *Deines v. Texas Dep't of Protective & Regulatory Serv.*, 164 F.3d 277, 280 (5th Cir.1999)).  The relevant inquiry for us, then, is not

14

to judge which employee was more qualified, but to determine whether any disparity between [the qualifications of the person who *was* selected] and [the plaintiff's] qualifications is so great that a reasonable fact-finder could infer that [the defendant] did not believe [the person who *was* selected] to be better qualified.

*Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).

When evaluating the other side of that argument — *i.e.*, when it is the plaintiff who asserts that he was more qualified than the person actually hired or promoted — the question is not "whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denny v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001).  Indeed, within the Eleventh Circuit, the standard for addressing relative qualifications requires a plaintiff to prove that he was "substantially more qualified than the person promoted" in order to establish pretext.  *Lee v. GTE Florida*, 226 F.3d 1249, 1255 (11th Cir. 2000).  The *Lee* Court explained that "disparities in qualification are not enough in and of themselves to demonstrate discriminatory intent *unless those disparities are so apparent as virtually to jump off the page and slap you in the face*." *Id.* at 1254 (quoting *Deines v. Texas Department of Protective and Regulatory Services*, 164 F.3d 277, 280 (5th Cir. 1999)).  As the Middle District of Alabama recently observed in *Norrell v. Waste Away Group, Inc.*, 246 F. Supp. 2d 1213 (M.D. Ala. 2003),

[t]his high standard for establishing discrimination based on the

relative qualifications of the competitors for a promotion serves the purpose of keeping the federal courts from second-guessing decisions made by employers in the course of their business. As the Eleventh Circuit explained in *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999), federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivated a challenged employment decision." *See Deines*, 164 F.3d at 281 (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position. . . . The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

*Norrell*, 246 F. Supp. 2d at 1223 n.12. The Eleventh Circuit further explained in *Lee v. GTE Florida* as follows:

> Nevertheless, evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual. *See Alexander*, 207 F.3d at 1340; *see also Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir.1998), *cert. denied*, 528 U.S. 809, 120 S. Ct. 39, 145 L. Ed. 2d 36 (1999) ("'The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination'") (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258-59, 101 S. Ct. 1089, 1096-97, 67 L. Ed. 2d 207 (1981)).

*Lee*, 226 F.3d at 1253-54.

Defendant's stated reason for selecting Ms. Lee is that she had the best interview score, contrasted with plaintiff, who was ranked sixth out of the eleven persons interviewed. Plaintiff nevertheless contends that he was more qualified for

16

the position than Ms. Lee, and points to the "core competencies"[40] listed on the job vacancy announcement as evidence in support of his contention.  Thus, plaintiff does not attempt to challenge defendant's conclusion that Ms. Lee outperformed plaintiff in the interview process, but instead deflects attention to other issues, the "core competencies."  Plaintiff, however, does not get to choose the selection criteria. Defendant explained that the core competencies were used to determine who among the applicants were qualified for an interview.[41]  Plaintiff could point to no evidence in the record to challenge defendant's conclusion that Ms. Lee performed much better during the interview process, or that she exhibited stronger leadership and management skills during her interview.

"A subjective reason [for selecting one applicant over others] is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman*, 229 F.3d at 1034.  In the instant case, Jones interviewed the candidates for the position himself and scored them based on identical questions asked of each candidate.[42]  Jones specifically articulated the reasoning for each point value given

---

[40]*See* Def. Exh. E at 20-26; Supplemental Exhibit 5 (doc. no. 38).

[41]*See* Reply Brief at unnumbered page 14 (doc. no. 31).

[42]*See* Def. Exh. H, Responses 9 and 12.

to plaintiff *versus* Ms. Lee.[43]  Jones testified that Ms. Lee was chosen because of her answers to the interview questions and her prior experience.[44]  Plaintiff has utterly failed to establish that the stated reasons of the selecting official were not the real reasons for the adverse employment decision, or that he was "substantially more qualified" than Ms. Lee for the supervisory position.  *Lee v. GTE Florida*, 226 F.3d at 1255.

Finally, the mere existence of an affirmative employment plan is insufficient to show that the selection of Ms. Lee over plaintiff was a pretext for discrimination.  *See Denney v. City of Albany*, 247 F.3d at 1189.  There is simply no evidence that Jones made his decision pursuant to or in compliance with defendant's Affirmative Employment Plan.  Jones testified he was not even aware of the affirmative employment plan at the time of his decision.[45]  Plaintiff asked the court to disbelieve Jones, but he does not provide any evidence to the contrary.[46]  The mere fact that Jones had been evaluated favorably with regard to his diversity efforts is completely distinct from adherence to an affirmative action plan.  An employer can focus on

---

[43]*See id.* at 5-10.

[44]*See id.* at 19, 22.

[45]*See* Def. Exh. G at 17-19.

[46]Plaintiff asserts that "NASA admitted that Jones was notified prior to October 2002 about NASA's Affirmative Employment Program." Plaintiff's Response at 27 (citing ES2-T16-Pg 1). This citation to the summary judgment evidence is merely to the Request for Admission.  It is not a citation to any document indicating Defendant admitted anything or that the Request for Admission was "deemed" admitted for purposes of summary judgment.

diversity without the existence of an affirmative action plan.  Further, commendation on past diversity efforts does not indicate unlawful hiring and promotion practices. Thus, plaintiff fails to establish pretext on the basis of relative qualifications.

### b.   Alleged deviation from the interview process

An employer's departure from its own hiring policies and procedures "may be suggestive of discrimination" and sufficient to carry a plaintiff's burden of pretext under certain circumstances.  *Carter v. Three Springs*, 132 F.3d 635, 644 (11th Cir. 1998).  Plaintiff contends that defendant deviated from its usual interview process by not evaluating each candidate according to the core competencies reflected in the job vacancy announcement.  Plaintiff, however, can point to no evidence in the record that indicates this was the required procedure.  Accordingly, plaintiff's argument is unavailing.

## B.   Alleged Discrimination on the Basis of Age

In ADEA cases, the plaintiff has the ultimate burden of proving that age was a determinative factor in the employer's adverse employment decision.

> When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).  That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had *a determinative influence* on the outcome."  *Ibid.* . . .

19

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) (alteration in original) (emphasis supplied).

There are three methods by which a plaintiff may prove an employer's intention to discriminate on the basis of age:  "by direct evidence of discriminatory intent; by meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); or by statistical proof of a pattern of discrimination." *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064 (1990); *see also, e.g., Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).[47]

To avoid summary judgment on an age discrimination claim, a plaintiff relying on circumstantial evidence must comply with the framework created for the evaluation of a plaintiff's proof of an employer's intention to discriminate in the context of Title VII disparate treatment claims.  That framework was defined by the Supreme Court in a series of three decisions rendered over a period of two decades,

---

[47]"Only the most blatant remarks, whose intent could only be to discriminate on the basis of age constitute direct evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1992). For this reason, the court finds that the comments made by Jones, and analyzed hereinafter under the *McDonnell Douglas* rubric, were not so blatant as to constitute direct evidence of age discrimination. Even if the court considered these comments direct evidence of age discrimination, defendant easily satisfies the test laid out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 265-66, 276-77 (1989). Defendant has successfully shown that it would have selected Ms. Lee even if it had not considered her age.

beginning with *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Although these cases involved discrimination claims under Title VII, a variant of the analysis also applies to claims based upon the ADEA. *See Reeves*, 530 U.S. at 141-42 (noting widespread use of *McDonnell Douglas* framework to analyze ADEA claims that are based principally on circumstantial evidence, and assuming its applicability) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming that *McDonnell Douglas* analytical framework applies to ADEA claims based on circumstantial evidence)); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (same); *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998) ("Since Bogle has presented no direct evidence that Orange County discharged him because of his age and relied, instead, on circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, . . ., governs his ADEA case."); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (applying *McDonnell Douglas* framework in an ADEA case); *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir. 1992) (same); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528

(11th Cir. 1987) ("This court applies a slightly modified version of the test set forth in *McDonnell Douglas Corp. v. Green*" when evaluating the strength of circumstantial evidence to prove a prima facie case of age discrimination.).

In all cases arising under the ADEA in which the plaintiff seeks to prove age discrimination by means of circumstantial evidence, the plaintiff bears the initial burden of establishing a *prima facie* case. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Chapman*, 229 F.3d at 1024; *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217 (11th Cir. 1993). "If a plaintiff establishes a prima facie case . . . the employer must articulate a legitimate, nondiscriminatory rationale for the [contested employment action]. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual." *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988); *see also Chapman*, 229 F.3d at 1024. The goal of the three-step process is that of "progressively . . . sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506 (*quoting Burdine*, 450 U.S. at 255 n.8).

In an ADEA case where the adverse action complained of is a failure to promote, the plaintiff may establish a prima facie case of age discrimination by showing that: (1) he was a member of the protected group of persons between the

ages of 40 and 70;[48] (2) he applied for promotion to another position within his employer's organization; (3) he was qualified to perform the duties of the position to which he sought promotion;[49] and (4) despite his qualifications, he was rejected and a substantially younger person was promoted.[50] *See, e.g., Chapman v. AI Transport*, 229 F.3d at 1024 (*en banc*); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1543 (11th Cir. 1988); *Moody v. Alabama Department of Education*, 883 F. Supp. 624, 629 (M.D. Ala. 1995); *Gaston v. Southern Bell Telephone and Telegraph Co.*, 674 F. Supp. 347, 349 (N.D. Ga. 1987).

With respect to the age discrimination claim, defendant again assumes plaintiff has established a *prima facie* case, and has offered the same legitimate non-discriminatory reason for selecting Ms. Lee.   To show pretext, plaintiff argues that

---

[48]The protections of the ADEA extend to those individuals who "are at least 40 years of age but less than 70 years of age."  29 U.S.C. § 621(a).

[49]*Cf.* Dorsch v. L.B. Foster Co., 782 F.2d 1421, 1425 (7th Cir. 1986) ("The meaning given to the term 'qualified' depends upon the nature of the employer's business at the time the decision to offer or terminate employment is made.").

[50]        Unlike race and sex discrimination cases, the plaintiff in an age discrimination case need not necessarily prove that his replacement was outside the protected class, that is, under forty years of age.  The plaintiff in an age discrimination case may establish a *prima facie* case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination.

Corbin v. Southerland Intern. Trucks, 25 F.3d 1545 (11th Cir. 1994).

Jones made age-related comments that reflect his bias against older people.  Jones even created a "facilities chart" showing the breakdown of experienced engineers at NASA.   According to plaintiff these comments call into question defendant's proffered reason for selecting Ms. Lee over him.

Jones explained that he created the chart to illustrate his concern over the past ten years that only one person had been hired for every four that left, and that the Facilities Department was half the size it was ten years ago; as a consequence, seasoned and experienced professionals were not able to pass along their knowledge to younger/inexperienced professionals.[51]  The relevancy of the age-related comments is questionable, given that the comments referred to hiring "fresh-outs" to fill *entry level positions*.  The selection at issue involved a *supervisory position* over the entire Facilities Department.  Placed in the proper context, these comments are insufficient to show that Ms. Lee's selection for the position was a pretext for age discrimination.  Accordingly, summary judgment is due to be granted on the age discrimination claim.

## IV.  CONCLUSION

In light of the foregoing, the motion for summary judgment is due to be granted.   An order consistent with this memorandum opinion will be entered contemporaneously herewith.

---

[51]*See* Def. Exh. H at 13-14.

DONE this 28th day of December, 2004.

_____
United States District Judge